Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| J.O.G ENGINEERING, CORP.<br><br>Recurrida<br><br>v.<br><br>COAMO BUILDERS, CORP., JAVIER MUÑIZ BECKER Y OTROS<br><br>Peticionaria | TA2025CE00858 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV00218<br><br>Sobre: Arrendamiento de Obras, Cobro de Dinero-Ordinario, Incumplimiento de Contrato |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece Javier Muñiz Becker (señor Muñiz Becker), Jane Doe y la Sociedad Legal de Gananciales (en conjunto, parte peticionaria) mediante un recurso de *certiorari*, para solicitarnos la revisión de la *Orden*, emitida y notificada el 20 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el dictamen recurrido, el tribunal de instancia dio por renunciado el derecho a la parte peticionaria de presentar un informe pericial.[1]

Por los fundamentos que expondremos, se *expide* el auto de *Certiorari* y se *revoca* la *Orden* recurrida.

I

El caso del título inició, el 10 de enero de 2024, cuando J.O.G. Engineering, Corp (en adelante, J.O.G. Engineering o parte

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI) a la Entrada Núm. 103.

recurrida) interpuso una *Demanda* sobre incumplimiento de contrato y cobro de dinero contra Coamo Builders Corp. y la parte peticionaria.[2] Se desprende del expediente que, mediante *Orden*, enmendada el 17 de abril de 2024, notificada el día 19, el mismo mes y año, el foro de instancia le anotó la rebeldía a Coamo Builders Corp (Coamo Builders).[3] Así, pues, ese mismo 17 de abril, notificada de forma enmendada el 8 de mayo de 2024, se emitió *Sentencia Parcial*, en la cual se declaró *Ha Lugar* la *Demanda* en cuanto a Coamo Builders.[4] En consecuencia, el referido foro le condenó a satisfacer a Coamo Builders la suma de $45,500.00 dólares, por concepto de principal, más la suma acumulada por concepto de intereses por mora, según pactados, a partir del 31 de octubre de 2022, a razón del 5% mensual del principal adeudado, más el interés legal que la suma indicada generara hasta su saldo completo, así como los honorarios de abogado, costas y gastos.

Así las cosas, el 15 de julio de 2024, J.O.G. Engineering instó una solicitud para que se le anotara la rebeldía a la parte peticionaria.[5] Arguyó que la parte peticionaria fue emplazada mediante edicto y que estos no habían comparecido ni habían presentado alegación responsiva. En consideración a lo anterior, mediante *Orden*, emitida el 20 de agosto de 2025, notificada el día 22, del mismo mes y año, el tribunal de instancia le anotó la rebeldía y solicitó a la parte recurrida presentar un proyecto de sentencia.[6]

Posteriormente, en virtud de una solicitud de reconsideración, incoada por la parte peticionaria,[7] mediante *Orden*, emitida y notificada el 10 de septiembre de 2024, el tribunal de instancia dejó sin efecto la anotación de rebeldía, le impuso una sanción

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] *Íd.*, a la Entrada Núm. 11.
[4] *Íd.,* a la Entrada Núm. 13.
[5] *Íd.,* a la Entrada Núm. 23.
[6] *Íd.,* a la Entrada Núm. 24.
[7] *Íd.*, a la Entrada Núm. 25.

económica,[8] y le concedió diez (10) días para presentar la correspondiente alegación responsiva.

En cumplimiento con lo ordenado, el 30 de septiembre de 2024, la parte peticionaria instó una *Contestación a demanda, Reconvención y Demanda contra tercero enmendada*.[9] Específicamente, presentó reconvención tanto contra J.O.G. Engineering como contra Coamo Builders. Por otro lado, en lo relativo a la demanda contra tercero, la misma fue contra Interdesign Architects; Fernando Rojas, Jane Doe y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, Matrimonio Rojas-Serrano); Carlos Taboas, Jane Doe y la Sociedad Legal de Gananciales compuesta por ambos; Aseguradoras A, B y C; Corporaciones D, E y F, y John Doe.

En mérito de lo anterior, e1 17 de octubre de 2024, se expidió emplazamiento personal para Coamo Builders Corp.; y para los terceros demandados.[10]

Luego, el 1 de noviembre de 2024, J.O.G. Engineering interpuso su contestación a la alegación responsiva de la parte recurrida.[11] Por otro lado, el 20 de noviembre de 2024, en escritos separados, tanto el señor Fernando Rojas, Marion Serrano y la Sociedad Legal de Gananciales (Matrimonio Rojas-Serrano), como Interdesign Architects, presentaron solicitudes para que se les concediera una prórroga para presentar alegación.[12] En respuesta, mediante *Órdenes*, emitidas y notificadas ese mismo 20 de

---

[8] SUMAC TPI, a la Entrada Núm. 28. Conviene mencionar que dicha *Orden* no le fue notificada a la parte peticionaria, sino que solamente se le notificó a su representación legal. Se desprende del SUMAC TPI, a la Entrada Núm. 33, que la sanción impuesta fue consignada en el foro de instancia.

[9] SUMAC TPI, a la Entrada Núm. 34. Previamente, la parte peticionaria incoó una *Contestación a demanda y reconvención*. No obstante, mediante *Moción en cumplimiento de Orden*, presentada en SUMAC TPI, a la Entrada Núm. 40, esbozó que el escrito presentado en el SUMAC TPI, a la Entrada Núm. 34 sustituía el presentado en el SUMAC TPI, a la Entrada Núm. 31.

[10] SUMAC TPI, a las Entradas Núm. 43-47.

[11] *Íd.,* a la Entrada Núm. 51.

[12] *Íd.,* a las Entradas Núm. 53-54

noviembre de 2024, se les concedió hasta el 12 de diciembre de 2024.[13]

Conviene mencionar que, a solicitud de J.O.G. Engineering, mediante *Orden,* emitida el 21 de noviembre de 2024 y notificada al día siguiente, el foro *a quo* ordenó el emplazamiento por edicto en cuanto a Carlos Taboas, Jane Doe y la Sociedad de Gananciales compuesta por ambos,[14] el cual fue expedido el 27 de noviembre de 2024.[15]

De lo que sigue, el 10 de diciembre de 2024, el Matrimonio Rojas-Serrano presentó su *Contestación a demanda contra terceros enmendada.*[16] Luego, presentó el mismo documento en el SUMAC TPI, a la Entrada Núm. 64. Por su parte y en igual fecha, Interdesign Architects interpuso su *Contestación a demanda contra terceros enmendada.*[17]

Así las cosas, el 18 de febrero de 2025, mediante escrito presentado por J.O.G. Engineering, se le indicó al foro de instancia haber notificado un descubrimiento de prueba al señor Javier Muñiz Becker.[18]

Tras varios incidentes procesales que no merecen ser reseñados, el 3 de junio de 2025, el foro *a quo* emitió una *Orden,* notificada al día siguiente, en la cual concedió veinte (20) días para que las partes, de manera individual, informaran el estado de los procedimientos, bajo apercibimiento de sanciones.[19]

En cumplimiento, el 18 de junio de 2025, J.O.G. Engineering interpuso una *Moción en cumplimiento de orden.*[20] En lo atinente, esbozó que el descubrimiento de prueba que fue cursado al señor

---

[13] SUMAC TPI, a las Entradas Núm. 57-58.
[14] *Íd.,* a la Entrada Núm. 59.
[15] *Íd.,* a la Entrada Núm. 60.
[16] *Íd.,* a la Entrada Núm. 62.
[17] *Íd.,* a la Entrada Núm. 63.
[18] *Íd.,* a la Entrada Núm. 68.
[19] *Íd.,* a la Entrada Núm. 75.
[20] *Íd.,* a la Entrada Núm. 76.

Javier Muñiz Becker fue contestado. Acotó que del mismo se desprendía que se había contratado los servicios del ingeniero Roberto Marte para la evaluación de los daños, pero que no se había producido el informe. Puntualizó que, no se había registrado actividad alguna, por parte del señor Javier Muñiz, desde el 8 de noviembre de 2024, es decir, por espacio de siete (7) meses.

Por su parte, el 23 de junio de 2025, Interdesign Architects presentó una *Moción en cumplimiento de orden.*[21] Esbozó haber notificado un descubrimiento a la parte peticionaria. Alegó haber confrontado dificultad para atender las controversias respecto a los asuntos relacionados al descubrimiento de prueba por lo que solicitó la asistencia del Tribunal.

Por otro lado, el 24 de junio de 2025, compareció la parte peticionaria mediante *Moción en cumplimiento de orden.*[22] Alegó que el informe pericial debía ser rendido en las próximas semanas y que, a tenor, estarían en posición de presentar una moción dispositiva en o antes del 15 de agosto de 2025.

Luego, el 26 de junio de 2025, el Matrimonio Rojas-Serrano informó haber notificado un descubrimiento de prueba para ser contestado por la parte peticionaria, pero que habían surgido controversias, las cuales razonaron que ameritaban la intervención del Tribunal.[23] Esbozaron que, una vez se obtuviesen las respuestas al descubrimiento cursado, estarían en posición de calendarizar una deposición a la parte peticionaria.

Recibidos los escritos, mediante *Orden*, emitida el 25 de junio de 2025 y notificada el 1 de julio de 2025, el foro *a quo* señaló una vista sobre el estado de los procedimientos, la cual quedó programada para el 19 de agosto de 2025.[24] Dispuso, además, que

---

[21] SUMAC TPI, a la Entrada Núm. 77.
[22] *Íd.*, a la Entrada Núm. 78.
[23] *Íd.,* a la Entrada Núm. 79.
[24] *Íd.,* a la Entrada Núm. 80.

las partes debían estar preparadas con fechas para calendarizar el caso. No se desprende de los autos que la vista hubiese sido celebrada. Tampoco surge minuta relacionada a dicho señalamiento de vista. No obstante, mediante *Orden,* emitida y notificada el 21 de agosto de 2025, se señaló vista sobre el estado de los procedimientos para el 11 de septiembre de 2025.[25] La vista sobre el estado de los procedimientos fue celebrada el 11 de septiembre de 2025.[26] Se desprende de la *Minuta,* en lo pertinente que el foro de instancia: (i) concedió al representante legal de la parte peticionaria hasta el 30 de septiembre de 2025, para presentar el informe pericial del ingeniero Roberto Marte y que, de ser necesario un término adicional, presentara la solicitud de prórroga, y (ii) concedió otros términos para trabajar asuntos relacionados al descubrimiento de prueba en curso. Por otro lado, señaló una nueva vista sobre el estado de los procedimientos para el 5 de noviembre de 2025.[27]

Posteriormente, el 30 de septiembre de 2025, la parte peticionaria incoó una *Moción informativa y en solicitud de prórroga.*[28] Esbozó que el ingeniero Roberto Marte había atravesado dificultades de salud, así como otras técnicas que le impedían presentar su informe en esa fecha. Dado a lo anterior, solicitó que se le concediera una prórroga hasta el 17 de octubre de 2025. En respuesta, mediante *Orden,* emitida y notificada el 8 de octubre de 2025, el tribunal de instancia dispuso lo siguiente:

> Se toma conocimiento de lo informado, respecto al informe. Se concede la extensión solicitada, hasta el 17 de octubre de 2025.[29]

En reacción, el 1 de octubre de 2025, J.O.G. Engineering presentó una *Solicitud de orden.*[30] Esbozó que los actos de la parte

---

[25] SUMAC TPI, a la Entrada Núm. 92.
[26] *Íd.,* a la Entrada Núm. 93.
[27] *Íd.*
[28] *Íd.,* a la Entrada Núm. 94.
[29] *Íd.,* a la Entrada Núm. 97.
[30] *Íd.,* a la Entrada Núm. 95.

peticionaria constituían un incumplimiento con el descubrimiento de prueba. Peticionó que no se le permitiera a la peticionaria presentar prueba pericial o en la alternativa, se le concediera un término perentorio para así hacerlo. Entonces, mediante *Orden*, emitida y notificada el 8 de octubre de 2025, el foro de instancia dispuso:

> Se toma conocimiento de lo informado. Se aclara que la extensión concedida mediante otra orden emitida en el día de hoy, es final y no admite prórroga adicional.[31]

Aunque no es necesario detallar, precisa acentuar que, posterior a la emisión de estas dos (2) órdenes, las partes continuaron presentando escritos relacionados al asunto de descubrimiento de prueba en curso. Ahora bien, en lo relativo a la controversia relacionada al informe pericial, el 20 de octubre de 2025, J.O.G. Engineering interpuso una *Moción informativa*.[32] Adujo que el término concedido a la parte peticionaria para presentar el informe pericial venció sin que se hubiese cumplido con lo ordenado. Le recordó al Tribunal cuáles eran las consecuencias para la parte peticionaria, de no cumplir. Solicitó al foro de instancia que tomara conocimiento de lo anterior.

Evaluado lo anterior, el 20 de octubre de 2025, el foro *a quo* emitió y notificó tres (3) órdenes.[33] Entre ellas, destacamos que notificó la *Orden* recurrida.[34] Mediante la antedicha *Orden*, el tribunal de instancia dispuso lo siguiente:

> Transcurrido el término concedido para presentar el informe, sin cumplimiento de la parte CoDemandada (sic) y según apercibido, el Tribunal da por renunciado su derecho a presentar el informe pericial.[35]

Al día siguiente, insatisfecha con lo resuelto, la parte peticionaria incoó una *Reconsideración*.[36] Alegó que, el 20 de

---

[31] SUMAC TPI, a la Entrada Núm. 96.
[32] *Íd.*, a la Entrada Núm. 99.
[33] *Íd.,* a las Entradas 102-103.
[34] *Íd.,* a la Entrada Núm. 103.
[35] *Íd.,* a la Entrada Núm. 103.
[36] *Íd.,* a la Entrada Núm. 104.

octubre de 2025, en horas de la mañana notificó a los representantes legales de las partes que estaría notificando el informe pericial en esa misma fecha. Adjuntó un documento con la finalidad de acreditar su gestión, la cual, conforme a lo alegado, fue previa a la presentación del escrito en el cual J.O.G. Engineering informó el alegado incumplimiento. En consideración a lo expuesto, solicitó que se reconsiderara lo actuado por el foro de instancia. En reacción y en igual fecha, Interdesign Architects y el señor Fernando Rojas presentaron su oposición.[37]

Examinados los antedichos escritos, mediante *Orden* emitida y notificada el 3 de noviembre de 2025, el foro *a quo* dispuso:

> El Tribunal apercibió que la última prórroga que se concedió no admitía extensión adicional. Por tal razón, la solicitud de reconsideración debe ser declarada No Ha Lugar.[38]

En desacuerdo con lo resuelto, el 3 de diciembre de 2025, compareció la parte peticionaria mediante un recurso de *Certiorari* en el cual esbozó el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al excluir el informe pericial del Ingeniero Roberto Marte como primera sanción procesal, antes de concluir el descubrimiento de prueba, sin Orden de Calendarización, sin advertencias claras, sin evaluar alternativas menos severas y en contravención directa con la doctrina de *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.,* 212 DPR 194 (2023), constituyendo un craso abuso de discreción, violatorio del debido proceso de ley y en perjuicio irreparable de los Recurrentes.

Mediante *Resolución* emitida el 5 de diciembre de 2025, concedimos a la parte recurrida hasta el 15 de diciembre de 2025, para expresarse en torno al recurso.

El 12 de diciembre de 2025, comparecieron los recurridos Interdesign Architects y el señor Fernando Rojas mediante *Moción en oposición a certiorari presentado por Javier Muñiz Becker, Jane Doe y la Sociedad Legal de Gananciales*. Con el beneficio de la

---

[37] SUMAC TPI, a la Entrada Núm. 105.
[38] *Íd.,* a la Entrada Núm. 106.

comparecencia de las partes, procederemos a disponer del recurso instado.

II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[39] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[40]
>
> [. . .].[41]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.
>
> [. . .].[42]

---

[39] 32 LPRA Ap. V, R. 52.1.
[40] *Íd.*
[41] *Íd.*
[42] *Íd.*

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[43] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[44] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[45] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[46] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [47]

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo

---

[43] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[44] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[45] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[46] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.
[47] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[48] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[49]

A la luz de la normativa antes expuesta, procederemos a resolver la controversia ante nos.

### B. El Orden de Prelación en la Imposición de Sanciones

En nuestro ordenamiento jurídico se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos.[50] A esos efectos, los tribunales a la hora de imponer sanciones, por el incumplimiento de órdenes o por la inactividad de una parte, deben optar por imponer sanciones severas solo como último recurso.[51] Esto pues, las sanciones drásticas no son favorecidas judicialmente.[52] En vista de ello, es menester que el tribunal sea progresivo en el uso de sanciones disciplinarias. Es decir, las sanciones deben ir de menor a mayor grado de severidad, para no afectar de plano la reclamación de una parte.[53]

Para cumplir con lo anterior, el juzgador de instancia debe seguir el orden de prelación de la Regla 39.2 (a) de Procedimiento Civil, antes de ordenar las sanciones más severas.[54] La antedicha regla establece que:

---

[48] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

[49] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

[50] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021); *Mejías v. Carrasquillo,* 185 DPR 288, 298 (2012).

[51] *Díaz Rivera v. AEELA,* 210 DPR 974, 978 (2022); *Amaro González v. First Federal Savings Bank,* 132 DPR 1042, 1051-1052 (1993).

[52] *Valentín v. Mun. de Añasco,* 145 DPR 887, 895 (1998).

[53] *Díaz Rivera v. AEELA,* supra, a la pág. 978.

[54] *Mitsubishi Motor v. Lunor y otros,* 212 DPR 807, 820 (2023); *Maldonado v. Srio. de Rec. Naturales,* 113 DPR 494, 498 (1982).

[s]i el demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud del demandado podrá decretar la desestimación del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que ésta no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación, que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.[55]

Particularmente, la Regla 37. 7 de Procedimiento Civil regula lo relacionado a la imposición de sanciones en caso de incumplimiento con órdenes y señalamiento sin que medie justa causa.[56] La referida regla dispone que "[s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda. [. . .]."[57] En otras palabras, el juzgador de instancia únicamente tendrá discreción para determinar si la justificación dada por la parte o su abogado para el incumplimiento es suficiente para imponer una sanción económica.[58] Ahora bien, "nada impide que posteriormente se impongan sanciones más drásticas, luego de que se aperciba a la parte sobre las consecuencias del incumplimiento y se le conceda un tiempo razonable para corregir la situación".[59]

---

[55] Regla 39.2 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (a).

[56] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205.

[57] Regla 37.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7.

[58] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205, citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, a la pág. 387.

[59] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205.

En lo pertinente al caso de marras, precisa destacar que nuestro Alto Foro ha razonado que la medida severa de excluir a un perito esencial es análoga a la medida de desestimación, de manera que, solo deberá usarse en circunstancias excepcionales.[60] Esto pues, el perito, como cualquier otro testigo, tiene la función de dar a conocer la verdad, utilizando su conocimiento especializado.[61] Sabido es que "presentar prueba en apoyo de una reclamación constituye uno de los ejes centrales del debido proceso de ley".[62]

### III

Mediante el único señalamiento de error esbozado por la parte peticionaria, nos plantea que el tribunal de instancia incidió tras excluir el informe pericial del ingeniero Roberto Marte como primera sanción procesal antes de concluir el descubrimiento de prueba, sin que exista en autos una orden de calendarización, sin haberse evaluado alternativas menos severas, constituyendo lo anterior un abuso de discreción. A tenor, nos han solicitado que expidamos el auto de *certiorari* invocado y revoquemos lo actuado por el foro primario.

Es de ver que, como cuestión de umbral, ante nuestra consideración se encuentra el que este Tribunal disponga si procede o no la expedición del auto de *certiorari* peticionado. Sabido es que, los de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[63] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. En lo atinente, vemos que la referida regla dispone que, por excepción, esta Curia puede intervenir para revisar órdenes o

---

[60] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205, citando a *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998).
[61] *San Lorenzo Trad., Inc. v. Hernández*, 114 DPR 704, 709-710 (1983).
[62] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 207.
[63] 32 LPRA Ap. V, R. 52.1.

resoluciones interlocutorias dictadas por la primera instancia judicial cuando se recurre de decisiones sobre admisibilidad de testigos de hechos o peritos esenciales o en cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. Por otro lado, y conforme a nuestra previa exposición doctrinal y jurisprudencia aplicable, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime cuáles son los criterios que debemos considerar en nuestro ejercicio para disponer si se expedirá el antedicho auto.[64]

Con lo anterior en mente, examinamos con detenimiento la totalidad de los autos ante nuestra consideración, incluyendo, además, las posturas de las partes. Luego de efectuar el referido examen, este Panel coinciden en que el tribunal de instancia incidió con su proceder. En consecuencia, es claro que el asunto ante nuestra consideración amerita que nos apartemos de la normativa que confiere discreción a las actuaciones del Tribunal de Primera Instancia e intervengamos en este caso. Por tanto, nos resulta forzoso expedir el presente recurso de *certiorari.*

Según relatamos previamente, el caso del título inició tras la presentación de una *Demanda* sobre incumplimiento de contrato por la parte recurrida. Entre los codemandados, se encuentra la parte peticionaria. Tras varios incidentes procesales, que incluyeron el que la parte peticionaria interpuso su reconvención, una demanda contra tercero enmendada, otros escritos relacionados a las alegaciones de las partes, allá, para el 18 de febrero de 2025, la parte recurrida informó al foro *a quo* haber notificado un descubrimiento de prueba a la parte peticionaria. Del expediente se desprende que este es el primer escrito en el cual se notificaba al foro *a quo* sobre los trámites relacionados al descubrimiento de

---

[64] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

prueba. En ese punto, además, y a once (11) meses de haberse presentado la demanda, no se había celebrado vista alguna ni se habían calendarizado los procedimientos en este caso.

En lo relativo al estado de los procedimientos en este caso, fue entonces que, meses más tarde, el 3 de junio de 2025, el tribunal de instancia emitió una *Orden* para que las partes, de forma individual informaran el estado de los procedimientos, bajo apercibimiento de sanciones. Conviene resaltar que dicha orden solo le fue notificada a los representantes legales, no así a las partes. De lo que se desprende y a modo de sintetizar, las partes informaron estar inmersas en el descubrimiento de prueba. En lo que respecta a la parte peticionaria, mediante escrito presentado el 24 de junio de 2025, informó que cierto informe pericial debía ser rendido en las próximas semanas y de ahí, estaría presentando una moción informativa en o antes del 15 de agosto de 2025. Fue a raíz de los escritos de las partes, relacionados al descubrimiento de prueba, que el foro primario señaló la primera vista en este caso, la cual programó para el 19 de agosto de 2025. Mediante la *Orden* con señalamiento de vista, les requirió a las partes estar preparadas con fechas para calendarizar el caso. No obstante, no surge de los autos que dicha vista se hubiese celebrado, ni una contraorden o minuta en cuestión. Empero, mediante *Orden* notificada el 21 de agosto de 2025, el foro *a quo* señaló una vista sobre el estado de los procedimientos para el 11 de septiembre de 2025, la cual fue celebrada.

Se desprende de la misma que, en lo pertinente, concedió término a la parte peticionaria hasta el 30 de septiembre de 2025, para presentar el informe pericial del ingeniero Roberto Marte y que, de ser necesario tiempo adicional, presentara una solicitud a esos efectos. De igual forma, concedió otros términos para trabajar asuntos relacionados al descubrimiento de prueba en curso y señaló

una nueva vista sobre el estado de los procedimientos para el 5 de noviembre de 2025. Surge, además, que, cónsono a las instrucciones impartidas, la parte peticionaria interpuso una solicitud de prórroga para presentar el informe pericial. Esbozó que el ingeniero Roberto Marte atravesó dificultades de salud, así como otras dificultades técnicas que le impedían presentar el informe en la fecha señalada. Peticionó una prórroga hasta el viernes, 17 de octubre de 2025. El tribunal de instancia accedió a lo solicitado. Sin embargo, J.O.G. Engineering interpuso un escrito en el cual solicitó que no se le permitiera a la parte peticionaria a presentar prueba pericial o que, en la alternativa, le concediera un término perentorio. De ahí que, el tribunal recurrido tomó conocimiento de lo informado y aclaró que la extensión provista -entiéndase la prórroga- era final y que no admitiría prórroga adicional. Puntualizamos que dicha *Orden* solo le fue notificada a las representaciones legales de las partes, no así a ninguna de las partes.

Ahora bien, el lunes, 20 de octubre de 2025, ocurrieron varios incidentes procesales. El primero fue que J.O.G. Engineering, mediante escrito, informó al Tribunal que el término para presentar el informe pericial había vencido y no se le había notificado. En respuesta, el tribunal *a quo* emitió tres (3) órdenes, de las cuales una es la recurrida. Allí, dispuso que, dado a que transcurrió el término provisto a la parte peticionaria, se daba por renunciado su derecho a presentar el informe pericial. Nuevamente, esta *Orden* solo le fue notificada a los representantes legales, no así a ninguna de las partes. En desacuerdo, la parte peticionaria interpuso una solicitud de reconsideración en la cual esbozó que, en la mañana del 20 de octubre de 2025, había notificado a los abogados que les estaría remitiendo el informe pericial en esa misma fecha y adjuntó un documento para acreditar su gestión y que dicha gestión fue realizada previo a que J.O.G. Engineering radicara su escrito al

Tribunal. También adjuntó un documento con la finalidad de acreditar haber remitido el informe pericial. Sin embargo, el foro de instancia declinó reconsiderar su determinación.

Sabido es que, en nuestro ordenamiento jurídico se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos[65]. A esos efectos, los tribunales a la hora de imponer sanciones, por el incumplimiento de órdenes o por la inactividad de una parte, deben optar por imponer sanciones severas solo como último recurso.[66] Por tanto, es necesario que el tribunal sea progresivo en el uso de sanciones disciplinarias. En otras palabras, las sanciones deben ir de menor a mayor grado de severidad, para no afectar de plano la reclamación de una parte.[67]

Aun cuando de los autos no se desprende que en el presente caso el foro de instancia hubiese calendarizado el descubrimiento de prueba, y puesto formalmente en marcha las disposiciones de la Regla 37 de Procedimiento Civil,[68] precisa señalar que la Regla 37.7 del referido cuerpo de reglas, regula lo relacionado a la imposición de sanciones en caso de incumplimiento con órdenes y señalamientos sin que medie justa causa.[69]

La referida regla dispone que "[s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda. [. . .]."[70] Un examen de la totalidad de los autos ante nuestra consideración, con especial énfasis en el trámite procesal que llevó al foro de instancia

---

[65] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021); *Mejías v. Carrasquillo,* 185 DPR 288, 298 (2012).
[66] *Díaz Rivera v. AEELA*, 210 DPR 974, 978 (2022); *Amaro González v. First Federal Savings Bank*, 132 DPR 1042, 1051-1052 (1993).
[67] *Díaz Rivera v. AEELA,* supra*,* a la pág. 978.
[68] Regla 37 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.
[69] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205.
[70] Regla 37.7 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7.

a dar por renunciado el derecho de la parte peticionaria a presentar el informe pericial, nos lleva forzosamente a concluir que el mismo no se llevó a cabo conforme a derecho. Lo anterior, más aún cuando el Alto Foro ha razonado que la medida severa de excluir a un perito esencial es análoga a la medida de desestimación, de manera que, solo deberá usarse en circunstancias excepcionales.[71]

Es por todo lo antes expuesto, que concluimos que el foro de instancia se excedió en su discreción con su proceder. El error alzado por la parte peticionaria fue cometido, por lo que procede la revocación de la *Orden* recurrida. En consecuencia, se autoriza como parte del descubrimiento de prueba en curso la presentación del informe pericial del ingeniero Roberto Marte y se ordena sin dilación, la continuación de los procedimientos.

IV

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari* y se *revoca* la *Orden* recurrida. En consecuencia, se autoriza la presentación del informe pericial del ingeniero Roberto Marte y se ordena sin dilación, la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[71] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 205, citando a *Valentín v. Mun. de Añasco*, supra, a la pág. 895.